Patricia Kirtley Wells (#013905)
Kirtley Wells Law Office
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 264-7424
E-Mail: tk@kwlolaw.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rudolph Gleason III,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Suncoast Glass and Glazing, LLC; Horn Doors, LLC and Mirror Works,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Rudolph Gleason III ("Gleason" or "Plaintiff") for his complaint against defendants alleges as follows:

1.  This Court has jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343 and 1345 to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2207 relating to declaratory judgments.

2.  The action is brought under the Civil Rights Act of 1866 and 42 U.S.C. § 1981 ("Section 1981") and §§ 704 (a) and 706 (f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (Title VII) and §102 of the

Civil Rights Act of 1991, 42 U.S.C. § 1981A.

3. Venue is proper in this Court because the practices complained of occurred in the District of Arizona and all defendants can be found in the District of Arizona.

## PARTIES

4. Plaintiff, at all relevant times, was a resident of Maricopa County, Arizona.

5. Upon information and belief, at all relevant times to this action, Defendant Suncoast Glass and Glazing, LLC is and has been an Arizona corporation doing business in the State of Arizona.

6. Upon information and belief, at all relevant times to this action, Defendant Mirror Works is and has been doing business in the State of Arizona.

7. Upon information and belief, at all relevant times to this action, Defendant Horn Doors, LLC is and has been an Arizona corporation doing business in the State of Arizona.

8. Upon information and belief Suncoast Glass, Horn Doors and Mirror Works were joint employers of Plaintiff Rudolph "Rudy" Gleason.

9. Defendant Suncoast advertises that Defendants Horn Doors and Mirror Works are divisions of Suncoast Glass and Glazing, LLC

## GENERAL ALLEGATIONS

10. Gleason, an African American, was hired as a door installer by Defendant Horn Doors on or about August 2017. At the time he was hired by Horn Doors Gleason had approximately 15 years' experience.

11. Gleason's job involved "running/overseeing jobs" including reading blueprints, working with the superintendent, giving assignments to workers and other responsibilities.

12. Throughout his employment at Horn Doors, Gleason was subjected to a racially hostile work environment consisting of overtly racist comments including "nigger," "burnt," "boy," "monkey" or asking Gleason "why do you have to be black?"

13. In December 2019, Gleason overheard Buck LNU (Caucasian lead worker) call Gleason as a "monkey nigger." Specifically, referring to Gleason, Buck said "Where did the Monkey Nigger go, to get some chicken?"

14. Gleason was humiliated, upset and offended by the comment.

15. He reported the incident the following day, on or about December 20, 2019, to Matt Cook, Horn Door's General Manager. Specifically, he told Cook that Buck called me a Monkey Nigger, what am I supposed to do?

16. Cook responded by asking Gleason if he wanted to "go to jail" and added "you could always look for a new job."

17. Gleason replied "why should I look for new job? I didn't do anything wrong." Cook did not indicate he would take any action to correct Buck's behavior.

18. After talking to Cook, Gleason was on vacation for approximately two weeks and was terminated soon after returning to work, on or about January 6, 2020, purportedly because he was stealing time.

19. The reason Suncoast/Horn Doors gave for terminating Gleason's employment were false and a pretext to guise their retaliation of Gleason because he opposed unlawful race discrimination.

20. Soon thereafter Nick Modesitt, Superintendent, Mirror Works called Gleason and acknowledged the termination was wrong, illegal and discriminatory. He reinstated Gleason's employment by assigning him to work at Mirror Works as a general laborer. Although Gleason was re-hired he continued to suffer retaliation as he was earning less pay and performing other less desirous job duties including picking up trash, carrying a ladder and performing duties referred to as grunt work.

21. Since the reassignment to Mirror Works Gleason has been referred to as "snitch" by his co-workers on numerous occasions and he has continued to be subjected to racial epithets and racial comments and retaliation all creating a racially hostile work environment including frequent use of the word nigger by some of Gleason's co-workers including lead workers and managers.

22. Defendants' lead workers made highly repugnant comments in Gleason's presence including "the only time I eat pork chops is when the nigger kids come over I tie it around their neck so the dog can play with them." Another lead worker commented I don't like black women's p***y they smell like javelina." Another lead worker commented "salves were treated good-we treated them like family."

23. A long term employee told Gleason that the superintendent previously had a noose in his office.

24. When discussing air conditioning in the vehicles, one of Defendants' managers stated "we don't even put our blacks in a truck without air conditioning."

25. One day when Gleason was eating lunch lead man Dan LNU said to Gleason "I knew you was a nigger, over there eating that chicken and watermelon."

26. The use of the terms such as monkey, nigger and other derogatory references to black women were humiliating and offensive to Gleason because the terms reduced, degraded and characterized African Americans as chattel related to a history of slavery, violence and discrimination against African Americans.

27. Defendants knew or should have known about the racially hostile work environment Gleason was subjected to because Gleason complained to his superiors regarding the racist comments on numerous occasions, to no avail.

28. Defendants also knew or should have known about the racially hostile work environment Gleason was subjected to because Defendants' managers and lead personnel/supervisors participated in creating the hostile work environment and/or were present when the humiliating and degrading comments were made.

29. The discriminatory treatment, retaliation and harassment was severe and pervasive and made Gleason's work environment hostile, intimidating and intolerable.

30. The unlawful racial harassment and retaliation was a denial of and/or a deprivation of Gleason's federally protected civil rights.

31. On one occasion Gleason was called into his manager's office where Superintendent Nick was sitting with a gun on his desk and another employee also held a

1  gun. Both men racked their guns several times.

2        32.    Gleason looked at the scene in disbelief and fear as they rack their guns looking at him. Nick handed his gun to Ivory (African American) who said you're going to give "nigger" a gun. The other employee (Caucasian male) with the gun responded "yes, we are going to give a nigger a gun."

      33.    On another occasion a Caucasian lead worker told Gleason "there is racism in this company, you either deal with it or you find a new job."

      34.    Defendants failed to take remedial action and the comments did not stop.

      35.    Defendants' comments deprived Gleason of his right to be free from discrimination and to enjoy the terms, conditions and privileges of his employment.

      36.    The hostile work environment and retaliation was so open, obvious, notorious, severe and pervasive such that Defendants management knew or should have known of the unlawful discrimination and the racially hostile work environment.

      37.    The hostile environment also included demeaning and offensive comments regarding women and Hispanic workers who were called border hoppers, rapist and wetbacks.

      38.    Gleason was afraid to pursue the matter as he realized there would be no effective mechanism to remedy Defendants' open and egregious behavior because he could not afford to risk retaliation and be terminated a second time.

      39.    In May 2021 Defendant again terminated Gleason's employment in retaliation for his opposition to its unlawful discrimination.

      40.    The unlawful employment practices complained of herein were intentional and were done with malice and/or with reckless indifference to Gleason's federally protected rights.

      41.    On March 27, 2020, Gleason filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging Defendants had discriminated against him because of his race, African American and retaliated against him because he had opposed practices made unlawful by Title VII of the

1  Civil Rights Act of 1964.

2      42.    Gleason received a Right to Sue Notice from EEOC and has timely filed this Complaint.

4      43.    Gleason has complied with all of the administrative requirements which are a precondition to filing suit under Title VII of the Civil Rights Act of 1964, as amended.

6      44.    The effect of the practices complained of above has been to deprive Gleason of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and/or color and in retaliation because he opposed the hostile work environment on the basis of race and/or color.

10      45.    Gleason is entitled to an award of back pay, punitive and compensatory damages as a result of the intentional, malicious and reckless nature of Defendants' conduct.

### COUNT I
### (42 U.S.C. § 1981
### Discrimination, Harassment & Retaliation)

46.    Plaintiff hereby realleges and incorporates all allegations set forth above.

47.    Defendants intentionally and maliciously injured, threatened and oppressed Gleason on the basis of his race, African American, thus denying him the rights of freedom, liberty and security granted to all citizens of the United States regardless of race in violation of 42 U.S.C. § 1981.

48.    Defendants failed to promptly investigate the allegations of unlawful discrimination and harassment made by Gleason and failed to take prompt, effective, remedial action as required by law to prevent Gleason from being discriminated against and harassed prior to his complaints of discrimination and after he made the complaints.

49.    Defendant retaliated against Gleason for reporting unlawful discrimination.

50.    As a direct and proximate result of Defendants' conduct, Gleason has suffered damages and continues to suffer damages in amounts to be proven at trial.

### COUNT II
### (Title VII
### Discrimination, Harassment & Retaliation)

51. Plaintiff hereby realleges and incorporates all allegations set forth above.

52. Defendants intentionally and maliciously injured, threatened, oppressed Gleason on the basis of his race, African American, in violation of Title VII.

53. Defendants failed to promptly investigate Gleason's allegations of unlawful discrimination and harassment and failed to take prompt, effective, remedial action as required by law and retaliated against Gleason for reporting unlawful discrimination.

54. As a direct and proximate result of Defendants' conduct Gleason has suffered damages and will continue to suffer damages in amounts to be proven at trial.

55. The conduct complained of above was reprehensible, reckless, intolerable and/or outrageous and was done in total conscious disregard of a substantial risk of significant harm to Gleason that was likely to and did in fact result from said conduct.

56. As a direct and proximate result of Defendants' willful retaliatory conduct, Gleason has been harmed in amounts to be proven at trial.

57. Plaintiff is entitled to punitive damages as a result of Defendants' conduct.

## DEMAND FOR JURY TRIAL

58. Plaintiff hereby requests a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that the Court:

A. Order Defendants to make Plaintiff whole by providing appropriate lost wages, including fringe benefits with prejudgment interest in amounts to be proven at trial including reinstate Plaintiff to his rightful position, including retroactive seniority and/or front pay in amounts to be proven at trial and other affirmative relief necessary to eradicate the effects of its unlawful practices.

B. Order Defendants to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful practices complained of above, including damages for emotional pain and suffering, including but

not limited to anguish, distress, humiliation, embarrassment, anxiety and ordeal, in amounts to be determined at trial.

    C.    Order Defendants to pay Plaintiff punitive damages for its malicious and/or reckless conduct, in amounts to be determined at trial;

    D.    Grant a permanent injunction enjoining Defendants and its officers, successors, assigns and all persons in active concerns or participation with them, from engaging in any employment practice which discriminates on the basis of race in violation of Title VII.

    E.    Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for qualified individuals and which eradicate the effects of its past and present unlawful employment practices;

    F.    A declaratory judgment that Defendants have violated Plaintiff's right to be free from discrimination and to enjoy the same rights as Caucasian persons pursuant to the Civil Rights Act of 1866. as amended by the Civil Rights Restoration Act of 1991; 42 U.S.C. §1981; 42 U.S.C., Section 1981A;

    G.    A declaratory judgment that Defendants have violated Plaintiff's rights to be free from discrimination and to enjoy the same rights as Caucasian persons pursuant to the Title VII;

    H.    Award Plaintiff his reasonable attorney's fees, costs, attorney's fees and pre-judgment and post judgment interest;

    I.    An award to Plaintiff of pre-judgment interest and post-judgment interest; on any awards at the highest rate allowed by law; and

    J.    Such other and further relief as this Court deems just, appropriate and proper.

    DATED this 14th day of June, 2021.

Kirtley Wells Law Office

By: /s/Patricia Kirtley Wells
Trisha Kirtley
4742 N. 24th Street, Suite 300
Phoenix, AZ 85016
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2021, I electronically transmitted the foregoing document to the Clerk's Office and defense using the ECF System for filing.

/s/Trisha Kirtley_____